**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

The Pep Boys – Manny, Moe & Jack, a Pennsylvania corporation,

          Plaintiff,

vs.

Young America, LLC, a Minnesota corporation,

          Defendant.

Court File No.: _____

**COMPLAINT AND DEMAND**
**FOR JURY TRIAL**

---

Plaintiff, The Pep Boys – Manny, Moe & Jack, for its Complaint against Defendant, Young America, LLC, states and alleges as follows:

## THE PARTIES

1.      The Pep Boys – Manny, Moe & Jack is a corporation organized and existing under the laws of the State of Pennsylvania with its principal place of business located at 3111 West Allegheny Avenue, Philadelphia, PA, 19132 (the "Pep Boys").

2.      Defendant Young America, LLC is a limited liability corporation organized and existing under the laws of the State of Minnesota with its principal place of business located at 10 South Fifth Street, Seventh Floor, Minneapolis, MN, 55402.

3.      Pep Boys is in the business of retailing automotive aftermarket parts and services through its chain of stores located throughout the United States. Plaintiff offers tires, auto parts, tools, and accessories together with car care, maintenance and repair services.

4.     Defendant was, until in or about April 2020, in the business of offering sales promotion, marketing, and fulfillment services to companies such as Pep Boys to assist them in the acquisition and retention of customers. Defendant's services have included the handling and processing of rebates, enter-to-win programs, loyalty marketing, product sampling, channel incentive programs, and business process outsourcing for its clients.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332, because Pep Boys is of diverse citizenship with Defendant and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs.

6.     Venue is proper in the United States District Court for the District of Minnesota pursuant to 28 U.S.C. § 1391(a) because Defendant resides in this district and the claims alleged herein arise in this district.

## FACTUAL BACKGROUND

7.     Since at least 2012, Defendant, pursuant to written agreement, provided to Pep Boys fulfillment services supporting Pep Boys' customer centric promotional programs.

8.     By Master Services Agreement effective as of March 1, 2018, and the March 1, 2018 Rebate Program Statement of Work attached as Exhibit A and made a part of the Master Services Agreement, Defendant agreed to provide to Pep Boys for a period of three years fulfillment services supporting Plaintiff's consumer rebate and other promotional programs via mail, telephone, email, website, inbound calling and any other

communication medium made available to Pep Boys through Defendant's fulfillment programs. A copy of the Master Services Agreement and the Rebate Program Statement of Work is attached and incorporated herein by reference as Exhibit 1.

9.    As part of the fulfillment services supporting Pep Boys consumer rebate and other promotional programs, Defendant was contractually obligated, in the Master Services Agreement, to provide approximately 20 processing services to Pep Boys for each submission made by Pep Boys to Defendant in respect of Pep Boys customer rebate and/or other promotional programs.

10.    In providing services under the Master Services Agreement, Defendant was provided with both personal information of Pep Boys' customers as well as confidential information of Pep Boys itself. Section 1.32 of the Master Services Agreement provides that any and all property that Pep Boys provides to Defendant in connection with Defendant's performance of its fulfillment services under the Master Services Agreement constitutes "Pep Boys' property." So too, Section 21.13 of the Master Services Agreement provides that the information constitutes Pep Boys' Confidential Information.

11.    Section 5.3 of the Master Services Agreement provides that immediately upon request of Pep Boys, Defendant was to deliver to Pep Boys all of Pep Boys' property and Confidential Information.

12.    Exhibit G of the Master Services Agreement "Data Security" required that Defendant implement and maintain a secure processing environment and required that Defendant implement firewalls, virtual private networks, and other security technologies, among other data security measures.

13.     Pursuant to Section 3.10 of the Master Services Agreement "Consumer

Reward Program Funding" the parties agreed, in relevant part, as follows:

- 3.10. [Defendant] requires the deposit of funds by [Pep Boys] in advance of fulfillment for the value of rewards and associated postage, including postage for non-compliant submissions. . .

- 3.10.2. [Defendant] will hold all funds received from [Pep Boys] for making a payment to a consumer under a Program in an account owned by [Defendant] and such funds will be commingled among [Defendant's]clients.

- 3.10.3. [Defendant] will maintain books and records that track funds balances by [Pep Boys] and promotion and the funds will be used solely for payment of rewards or postage as the case may be and as may be set forth in a SOW. [Defendant] will not use Consumer Reward Funds for its operating expenses.

14.     In addition, Section 5 of the Statement of Work "Consumer Reward Funding

and Breakage" and specifically Section 5.2, required the deposit of funds by Pep Boys with

Defendant in advance of any rebate card activation and check creation and distribution.

15.     Section 5.3 of the Statement of Work contractually required Defendant to

refund to Plaintiff all amounts relating to breakage not less than quarterly. Breakage

describes revenue gained through unredeemed gift cards or other unpaid services that are

never claimed by a customer. Section 5.3 of the Statement of Work states as follows:

> [Defendant] will refund [Pep Boys] quarterly for funds relating to breakage on Cards and Checks. The breakage refund is sent to [Pep Boys] on or before (i) May 31 for the quarterly period January 1 – March 30, (ii) August 30 for the quarterly period April 1 – June 30, (iii) November 30 for the quarterly period July 1 – September 30; and (iv) February 28 for the quarterly period October 1 – December 31. The Breakage Refund is equal to the total value of Expired Cards that have not been used; the remaining value of Expired Cards which have been partially used; and the total value of Expired Checks that have not been cashed.

16.     Section 5.4 of the Statement of Work contractually required that Defendant maintain adequate books and records of the rebate fund amounts specifically, books and records that track Pep Boys' Card funds balances.

17.     Section 21.7 of the Master Services Agreement provides that on five business days' notice, Pep Boys was entitled to conduct an audit of its account. To that end, Defendant contractually agreed that: "[Pep Boys] shall be given access for auditing purposes to all of [Young America's] records, documentation, files and inventory pertaining to the [MSA] . . ."

18.     In or about April 2020, Defendant announced that it was ceasing business operations. Because Defendant was in possession of both Pep Boys' Confidential Business Information, as well as personal information of Pep Boys' customers, counsel for Pep Boys wrote to Defendant by letter dated April 22, 2020 demanding that Defendant promptly deliver to Pep Boys all information and data in its possession (or that it had provided to third parties for processing or storage), and that Defendant certify that all copies, reproductions and collections of such information in its possession, custody or control after such return have been securely destroyed.

19.     In addition, in the April 22, 2020 letter, Pep Boys, through its counsel, demanded that Defendant promptly pay to Pep Boys all amounts due and owing as breakage as set forth in the Master Services Agreement, specifically Section 5.3 thereof, in an amount over $847,465.12. The April 22, 2020 demand followed earlier oral communications between Pep Boys and Defendant concerning Pep Boys customer

information, Pep Boys' Business Information, and the breakage due Pep Boys from Defendant.

20.     Subsequent to April 22, 2020, and on information and belief, Defendant delivered to Pep Boys its customer information and Confidential Information. However, Defendant did not provide assurances that it had, consistent with its contractual obligations under the Master Services Agreement, securely destroy all copies, backups or other compilations of the Pep Boys' customer information and Confidential Information that was in the possession of Defendant and/or any third party with whom Defendant had disclosed or provided any such information including, without limitation, any third party hosting or other service provider.

21.     Moreover, Defendant failed and refused to pay to Pep Boys any amounts due and owing as breakage as defined in the Master Services Agreement, and as demanded in the April 22, 2020 letter.

22.     Accordingly, by letter dated June 11, 2020, Pep Boys, through its counsel, wrote to Defendant to renew the demand made upon Defendant for written certification that all copies, reproductions and collections of Pep Boys' customers' personal information and Pep Boys' Confidential Information had been securely destroyed, for a full accounting under and pursuant to Section 21.7 of the Master Services Agreement, and payment to Pep Boys by Defendant of the $847,465.12 earlier demanded as and for breakage, as the term is defined in the Master Services Agreement.

23.     In the June 11, 2020 letter, Pep Boys also provided to Defendant, pursuant to Section 21.7 of the Master Services Agreement, its five business days' notice of Pep

Boys' contractual right to conduct an audit of its account and specifically to be given access for audit purposes of all of Defendant's records, documentation, files and inventory pertaining to the Master Services Agreement.

## COUNT I:  BREACH OF CONTRACT

24.     Pep Boys re-alleges and incorporates herein by reference paragraphs 1 through 23 above as if the same were set forth in full herein.

25.     Despite Pep Boys' demands, Defendant has failed and refused and continues to fail and refuse to perform the terms of the Master Services Agreement on its part to be performed, in that Defendant has failed and refused to provide adequate assurance that it has securely destroyed all copies, backups or other compilations of any and all information of Pep Boys' customers and Pep Boys' Confidential Information in its possession, custody or control or that of any third party with whom Defendant has disclosed to or provided any such information including, without limitation, any third party hosting or other service provider.

26.     Despite Pep Boys' demands, Defendant has also failed and refused and continues to fail and refuse to perform terms of the Master Services Agreement on its part to be performed, in that Defendant has failed and refused to refund to Pep Boys funds relating to breakage on Cards and Checks that Pep Boys has calculated to be equal to at least $847,465.12. So too has Defendant failed and refused and continues to fail and refuse to make arrangements and allow Pep Boys to conduct an audit of its account and specifically to give Pep Boys access for audit purposes of all of Defendant's records, documentation, files and inventory pertaining to the Master Services Agreement.

27.     Plaintiff has performed all things on its part to be performed under the terms of the Master Services Agreement.

28.     As a direct and proximate result of Defendant's breaches of the Master Services Agreement, Pep Boys has suffered damages in the amount of at least $847,465.12 (exact amount to be determined at trial).

## COUNT II:  ACCOUNTING/AUDIT

29.     Pep Boys re-alleges and incorporates herein by reference Paragraphs 1-28 above as if the same were set forth in full herein.

30.     Section 21.7 of the Master Services Agreement entitles Pep Boys, on five business days' notice, to conduct an audit of its account with Defendant. To that end, Pep Boys is to be given access for audit purposes of all of Defendant's records, documentation, files and inventory pertaining to the Master Services Agreement.

31.     By letter dated June 11, 2020, Pep Boys made demand upon Defendant pursuant to Section 21.7 of the Master Services Agreement to be given access for audit purposes of all of Defendant's records, documentation, files and inventory pertaining to the Master Services Agreement. Despite demand therefore, Defendant has failed and refused and continues to fail and refuse to make available those records to Pep Boys for Pep Boys to conduct its contractually granted audit right.

32.     The records, documentation, files and inventory pertaining to the Master Services Agreement in Defendant's possession, custody and control are strictly within Defendant's control and contain the information necessary to specifically ascertain the amounts owed by Defendant to Pep Boys for the refund relating to breakage pursuant to

Section 5.3 of the Statement of Work. Accordingly, Pep Boys seeks an Order specifically requiring Defendant to provide to Pep Boys, for audit purposes, and an accounting all of Defendant's records, documentation, files and inventory pertaining to the Master Services Agreement.

WHEREFORE, Plaintiff The Pep Boys – Manny, Moe & Jack request relief as follows against Defendant Young America, LLC:

1.  For a judgment in the sum of at least $847,465.12 (the exact amount to be determined at trial), together with interest thereon and Pep Boys' legal fees, costs and disbursements expended herein in accordance with paragraph 21.9 of the Master Services Agreement;

2.  For an Order requiring that Defendant make available to Pep Boys, for audit and accounting purposes, all of Defendant's records, documentation, files and inventory pertaining to the Master Services Agreement;

3.  For an Order specifically requiring that Defendant certify to Pep Boys that it has, in fact, securely destroyed all copies, backups or other compilations of any and all information of Pep Boys' customers and Pep Boys' Confidential Information in its possession, custody or control and that of any third party with whom Defendant has disclosed to or provided any such information including, without limitation, any third party hosting or other service provider; and

4.  For such other and further relief as the Court deems just and proper under the circumstances.

## JURY DEMAND

Plaintiff demands a jury trial.

Dated:  July 13, 2020                        **LARSON · KING, LLP**


By  *s/ Peter J. Gleekel*
   Peter J. Gleekel (149834)
   Mark A. Solheim (213226)
2800 Wells Fargo Place
30 E. Seventh Street
St. Paul, MN  55101
Tel:  (651) 312-6500
Fax:  (651) 312-6618
pgleekel@larsonking.com
msolheim@larsonking.com

*Attorneys for Plaintiff*


1965697